UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YANFENG INTERNATIONAL
AUTOMOTIVE TECHNOLOGY CO.,
LTD., f/k/a YANFENG GLOBAL
AUTOMOTIVE INTERIOR
SYSTEMS CO., LTD.,
a Chinese entity, YANFENG US
AUTOMOTIVE INTERIOR
SYSTEMS I LLC, a Delaware limited
liability company, and YANFENG US
AUTOMOTIVE INTERIOR
SYSTEMS II LLC, a Delaware limited
liability company,

      Plaintiffs,

v.

DIVERSIFIED PLASTICS
CORPORATION, a Missouri
corporation,

      Defendant.

Case No. 22-CV-_____

Hon. _____

> *There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.*

---

## **VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

     Plaintiffs, Yanfeng International Automotive Technology Co., Ltd., f/k/a Yanfeng Global Automotive Interior Systems Co., Ltd., Yanfeng US Automotive Interior Systems I LLC, and Yanfeng US Automotive Interior Systems II LLC, through their attorneys, The Miller Law Firm, P.C., and for their Verified Complaint for Injunctive and Other Relief, state as follows.

-1-

## INTRODUCTION

1.      Defendant Diversified Plastics Corporation ("Diversified") supplies Plaintiffs, Yanfeng Global Automotive Interior Systems Co., Ltd., Yanfeng US Automotive Interior Systems I LLC, and Yanfeng US Automotive Interior Systems II LLC (collectively, "Yanfeng"), with materials used by Yanfeng to manufacture automotive components sold to its customers. Dating back to early 2021, Diversified has made multiple demands for changes to the fixed price contracts agreed to by the parties.  Yanfeng voluntarily gave Diversified pricing relief, but now Diversified is now coming back asking for more. Proving the adage that no good deed goes unpunished, Diversified is demanding even more pricing concessions, seeking approximately $247,000 in increased pricing for 2022 alone plus amounts going forward, and threatening not to supply to the supply contracts.  ***Not only has Diversified threatened not to supply parts to Yanfeng as an effort to extort more payments, it carried out its threats beginning on August 1, 2022, by refusing to load its parts on trucks for delivery to at least two of Yanfeng's plants, including in Harrison Township, Michigan, and Riverside, Missouri.  If Diversified continues to withhold shipments, and does not ship by August 8, 2022, GM's E2UL program will be impacted on August 11, 2022, Ford's U725 program will be impacted on August 12, 2022, and Stellantis' RU program will be impacted on August 23, 2022.  Diversified's refusal to supply will also impact Yanfeng***

*customers Volkswagen and Volvo in the coming months as indicated below:*

| PN | PO No. | Yanfeng Plant | OEM | Vehicle Program | Yanfeng Runout Date |
|---|---|---|---|---|---|
| 62025665 | DIPC-R | RIVERSIDE | GM | E2UL | 11-Aug |
| 62025666 | DIPC-R | RIVERSIDE | GM | E2UL | 11-Aug |
| 62029208 | DIPC-R | RIVERSIDE | GM | E2UL | 11-Aug |
| 62029209 | DIPC-R | RIVERSIDE | GM | E2UL | 11-Aug |
| 62029210 | DIPC-R | RIVERSIDE | GM | E2UL | 11-Aug |
| 62029211 | DIPC-R | RIVERSIDE | GM | E2UL | 11-Aug |
| Y0071859 | 56501340 | HARRISON/ANJI | Ford | U725 | 12-Aug |
| Y0071860 | 56501340 | HARRISON/ANJI | Ford | U725 | 12-Aug |
| Y0071861 | 56501340 | HARRISON/ANJI | Ford | U725 | 12-Aug |
| Y0071862 | 56501340 | HARRISON/ANJI | Ford | U725 | 12-Aug |
| Y0310307 | 55083690 | SOUTHVIEW | Stellantis | RU | 23-Aug |
| Y0162454 | 56502945 | CHATTANOOGA | VW | VW416 | 5-Dec |
| Y0224735 | 55007274 | FINN | Volvo | V536 | January 2023 |
| Y0224786 | 55007274 | FINN | Volvo | V536 | January 2023 |

2.      Yanfeng requests entry of a preliminary injunction which preserves the *status quo* by requiring Diversified to continue supplying to Yanfeng in accordance with the parties' written contracts, including the supply of all part numbers which Diversified now refuses to supply, including expanded polypropylene foam ("EPP"

foam) and related parts and materials (collectively, the "Components") for the affected Ford, GM, Stellantis, Volkswagen, and Volvo vehicle programs (the OEM programs) and to expedite shipments at Diversified's expense in order to avoid customer shutdowns on August 10, 2022.

3.     Diversified's unlawful decision to stop shipments to Yanfeng on at least two occasions already – to two plants affecting two separate OEM programs – with more to immediately follow, constitutes material breaches of the parties' supply agreements. ***Diversified acknowledged and agreed that monetary damages are not a sufficient remedy for any actual, anticipatory or threatened breach of [its supply agreements] and that, in addition to all other rights and remedies that [Yanfeng] may have, [Yanfeng] <u>shall be entitled</u> to specific performance and injunctive equitable relief as a remedy for any such breach, plus [Yanfeng's] reasonable attorneys' fees and costs.*** See the Terms and Conditions of the parties' contracts at ¶13.

4.     Yanfeng purchases the Components from Diversified and incorporates them into automotive parts supplied to the specifications of multiple Original Equipment Manufacturers ("OEM"), including Ford Motor Company ("Ford") (for its U725 project), General Motors Company ("GM") (for its E2UL project), FCA US, LLC, acquired by Stellantis N.V. ("Stellantis") (for its RU project), Volkswagen Group ("VW") (for its VW416 project), and Volvo Car Corporation ("Volvo") (for

its V536 project), and/or affiliated entities. Diversified's failure to supply the Components for each of these projects negatively affects (at least) five of Yanfeng's automotive plants, each OEM's respective automotive plants, thousands of employees, and the intangible business relationship between Yanfeng and its customers.

5.      On June 28, 2022, Diversified, through CEO/President, Mr. Kenney Magers, unilaterally demanded Yanfeng "initiate cost increases effective 07/15/22." **Exhibit 1**. Diversified, complaining of labor issues, characterized their demand as "an imperative action for the continued health of [Diversified] to supply molded EPP to your locations." *Id*. Despite the pricing set forth by contract, Diversified demanded "revised P.O.'s no later than 7/15/22." *Id*.

6.      On July 14, 2022, Diversified, again through Kenney Magers, stated it was "notifying all customers that unless we receive new/revised purchase orders, that are reflecting the price increases for your products, we will be forced to stop the shipments and flow of parts to your respective locations as of 8/01/22." **Exhibit 2**. It did not expand upon why it was unilaterally seeking unlawful price increases, beyond alleging that "force majeure events have put us in this unfortunate situation." *Id*. Contrary to Yanfeng's requests, Diversified further refused to provide any support for its demands stating: "[n]o other documentation/financial information will be provided. (i.e. Quotes, financial statements, etc.)" *Id*.

7.      On August 1, 2022, Yanfeng responded to Diversified's June 28, 2022 letter, notifying Diversified, *inter alia*, that the terms of the binding requirements contracts prohibit change without Yanfeng's written approval, and such contracts require continued shipment without interruption. **Exhibit 3**. Diversified was also reminded that it expressly assumed the risk of events or causes affecting pricing, including, without limitation, increases in raw material costs, inflation, increases in labor costs, and other production and supply costs. *Id.*

8.      On August 1, 2022, Diversified, through email correspondence to Yanfeng, expressly and unambiguously indicated that it would stop shipments.

9.      On August 2, 2022, Yanfeng demanded assurances from Diversified. **Exhibit 4**. Yanfeng informed Diversified that the Components are used to manufacture just-in-time ("JIT") products for Yanfeng's customers. *Id.* Yanfeng advised Diversified that any disruption in the normal production and delivery of the Components will cause serious, immediate, and irreparable harm to Yanfeng. *Id.* As referenced therein, Yanfeng's Terms and Conditions of Purchase – United States ("Ts & Cs") are binding upon Diversified and attached hereto as **Exhibit 5**. Given the urgency of Diversified's threats, Yanfeng requested Diversified provide adequate assurances by COB on August 3, 2022.

10.     On August 3, 2022, Diversified responded to Yanfeng's demand for assurances in the negative, indicating that, due to increased material and labor costs

as well as increased costs for electricity, "we are better off exiting our business than to continue incurring the losses." **Exhibit 6**. Diversified "encouraged" Yanfeng to re-source its Components and tooling to a new supplier, ignoring that it takes multiple months and OEM approvals to re-source the Components through a new supplier, if an EPP supplier is even available, *and* that Yanfeng will run out of certain Components by August 10, 2022, further exacerbating the need for specific performance and immediate injunctive relief.

11.     As of August 1, 2022, Diversified had unlawfully stopped shipments of the Components to all of Yanfeng's plants, thereby affecting all five OEM programs and necessitating the present litigation.

12.     *Diversified has no right to stop supplying the Components to Yanfeng, and no right to unilaterally alter the pricing in the midst of ongoing programs critical to each affected OEM. Yanfeng has voluntarily given Diversified pricing relief. Diversified has admitted that it can supply. It simply decided it does not want to. Yanfeng cannot obtain the Components anywhere else and Diversified cannot foot the bill for a multiple OEM shutdown due to its breach based on its (unsubstantiated) claims of financial hardship. Immediate injunctive relief in necessary.*

13.     Based on Diversified's failure to supply Yanfeng, Yanfeng's Riverside, Missouri plant (supplying GM) and its Harrison Twp., Michigan plant (supplying

Ford) will be shut down on August 10, 2022 and its Southview plant in Holland, Michigan (supplying Stellantis) will be shut down on August 23, 2022. Yanfeng's OEM customers will be impacted within hours or days of Yanfeng's plants being idled by Diversified.

14.     Diversified's latest demands for unilateral price increases are ***directly contrary*** to Diversified's agreement to supply the Components to Yanfeng for the life of each of the vehicle programs at the agreed upon pricing, pursuant to Yanfeng's award letters and purchase orders ("POs"), which incorporate Yanfeng's Ts and Cs (collectively, the "Contract"). The relevant award letters are attached at **Exhibit 7** and the relevant purchase orders are attached at **Exhibit 8**. Yanfeng's reputation with each of these OEMs is on the line. Immediate injunctive relief to maintain the status quo is necessary.

15.     Like other automotive suppliers including Yanfeng, Diversified asserts it is currently experiencing increased labor and raw material costs. Diversified cannot argue that the current market challenges of increased labor costs and materials costs were not foreseeable, as those challenges existed in 2021 and 2022 when Diversified and Yanfeng entered into new award letters, and when Diversified accepted new purchase orders. Consequently, Diversified knowingly assumed these currently existing risks, which is reflected in the parties' written contracts.

16.     ***Diversified has no right to stop supplying the Components to***

*Yanfeng, and no right to alter the pricing mid-program, whether for goods already delivered or to be delivered in the future. Any material, labor, or electrical cost increases are a supplier responsibility, and are otherwise subject to the parties' Contract.  The latest ransom demand from Diversified, and its refusal to ship Components, breaches the parties' contract, violates public policy, will put thousands of Yanfeng and OEM employees out of work until Diversified supplies again, destroys Yanfeng's reputation with its OEM customers, and puts a complete stop to the affected OEM programs.*

17.    In the absence of a preliminary injunction, Yanfeng will suffer immediate, substantial, and irreparable harm.

18.    Yanfeng has investigated the prospect of re-sourcing the EPP and related materials at issue to a new source.  However, there are no immediately available alternative sources and Yanfeng is unable to re-source these parts at this time.  Diversified knows this and is opportunistically taking advantage. This further demonstrates that Yanfeng will suffer immediate, substantial, and irreparable harm if Diversified is permitted to willfully interrupt the automotive supply chain in this fashion, all because Diversified is (at best) willfully ignoring its clear contractual obligations.

19.    Further, Yanfeng's OEM plants will be forced to shut down shortly after Yanfeng, and those OEMs may decide to terminate critically important

contracts with Yanfeng. The OEMs may charge Yanfeng thousands of dollars for each minute of downtime, jeopardizing Yanfeng's name and reputation in the automotive supply chain marketplace.  But, as Diversified is well-aware, not only one OEM will be affected, but five, dramatically increasing damages to Yanfeng's reputation and goodwill.  Diversified likely does not have the financial wherewithal to pay these damages, but it does have the ability to continue to ship the Components.

## PARTIES, JURISDICTION, AND VENUE

20.    Plaintiff Yanfeng International Automotive Technology Co., Ltd., f/k/a Yanfeng Global Automotive Interior Systems Co. Ltd. is an entity organized under the laws of China, with its principal place of business in Plymouth, Michigan.

21.    Plaintiff Yanfeng US Automotive Interior Systems I LLC is a limited liability company organized under the laws of Delaware, with its principal place of business in Novi, Michigan.  Its sole member is Yanfeng US Automotive Interior Systems LLC, is a Delaware limited liability company with its principal place of business in Novi, Michigan.  Its members are Yanfeng International Automotive Technology Hungary Kft., a Hungarian entity and Yanfeng International Automotive Technology Co. Ltd., a Chinese entity.

22.    Plaintiff Yanfeng US Automotive Interior Systems II LLC is a limited liability company organized under the laws of Delaware, with its principal place of business in Novi, Michigan.  Its sole member is Yanfeng US Automotive Interior

Systems LLC, is a Delaware limited liability company with its principal place of business in Novi, Michigan.

23.     Defendant Diversified Plastics Corporation is a corporation organized under the laws of Missouri, with its principal place of business in Nixa, Missouri.

24.     This Court may exercise original jurisdiction over Diversified under 28 U.S.C. § 1332 because the parties are citizens of different states as defined by § 1332(c).

25.     This Court has subject matter jurisdiction, as Plaintiffs seek equitable relief.  In the alternative, the amount in controversy exceeds $75,000.

26.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Yanfeng's claims occurred in this District, because Diversified conducts business in the Eastern District of Michigan, and because Diversified agreed to venue in this Court in paragraph 34 of the Ts & Cs, Exhibit 5.

## GENERAL ALLEGATIONS

### I.     The Yanfeng-Diversified Supply Relationship

27.     Yanfeng entered into several award letters with Diversified for the supply of automotive parts and has been doing business with Diversified since 2017.

28.     At issue here are five award letters for five OEM programs. Each award letter incorporates and is expressly subject to Yanfeng's Ts & Cs.

29.     The award letters require Diversified to supply the Components for the life of each applicable OEM program.

30.     The Ts & Cs similarly provide that Diversified, as "Seller," is obligated to supply the Components to Yanfeng, as "Buyer," for the life of the programs and under fixed prices. **Exhibit 5**, ¶¶ 2, 4

31.     The pricing under the supply agreements is fixed, and the parties' agreed Ts & Cs state:

> Except as expressly stated on the Order, the price of Supplies stated on the Order is complete and fixed. The price of Supplies includes storage, handling, packaging and all other expenses and charges of [Diversified], and no surcharges, premiums or other additional charges of any type shall be added without [Yanfeng's] express written consent.
>
> ***
>
> ***Prices are not subject to increase, unless specifically stated in the Order or an Agreement, and [Diversified] assumes the risk of any event or cause affecting prices, including without limitation, foreign exchange rates, increases in raw material costs, inflation, increases in labor and other production and supply costs, and any other event which impacts the price or availability of materials or supplies***. Prices may be subject to decrease as agreed in the Order or other written agreement.

**Exhibit 5**, ¶ 4 (emphasis added).

32.     Additionally, Yanfeng has issued Diversified POs with the pricing agreed to by Diversified and Diversified has shipped the Components to Yanfeng under these POs, and accepted Yanfeng's payment for the Components. **Exhibit 8**.

33.     At issue here are purchase order numbers DIPC-R, 56501340,

56501314, 56502945, and 55083690. Each purchase order is subject to Yanfeng's Ts & Cs.

34.    For years, the supply relationship between Yanfeng, a Tier 1 supplier in this instance, and Diversified, the Tier 2 supplier, was relatively stable.

35.    However, the supply relationship took a turn for the worse not long after Diversified doubled down on its June 2022 demands for even further increased and revised pricing.

## II.    Breakdown in Supply Relationship

36.    In early 2021, Diversified became increasingly demanding with respect towards the pricing utilized in the parties' written contracts for the Components.

37.    Yanfeng, in good faith, voluntarily worked with Diversified in response to its increasingly unreasonable demands, even making compromises to its contractually mandated pricing with Diversified.  Updated purchase orders were issued under protest.

38.    Commencing in June 2022, however, Diversified demanded Yanfeng's agreement to significant price increases for the Components, which is directly contrary to the parties' agreements and pricing.

39.    On June 28, 2022, Diversified unilaterally demanded Yanfeng "initiate cost increases effective 07/15/22." **Exhibit 1**.

40.    On July 14, 2022, Diversified stated it was "notifying all customers that

unless we receive new/revised purchase orders, that are reflecting the price increases for your products, we will be forced to stop the shipments and flow of parts to your respective locations as of 8/01/22." **Exhibit 2**.

41.     On August 1, 2022, Yanfeng responded to Diversified's June 28, 2022 letter, demanding continued shipment without interruption. **Exhibit 3**.

42.     On August 1, 2022, Diversified, through email correspondence to Yanfeng, expressly and unambiguously indicated that it would stop shipments.

43.     On August 2, 2022, Yanfeng demanded assurances from Diversified. **Exhibit 4**. Yanfeng requested Diversified provide adequate assurances by COB on August 3, 2022. *Id*.

44.     On August 3, 2022, Diversified responded to Yanfeng's demand for assurances in the negative, indicating that, due to increased material and labor costs, "we are better off exiting our business than to continue incurring the losses." **Exhibit 6**.

45.      August 1, 2022, Diversified had unlawfully stopped shipments of the Components to all of Yanfeng's plants.

46.     Diversified's position is plainly contrary to the parties' Contract, whereby Diversified assumed the risk of any price increases.

47.     ***Diversified has persisted in its unlawful demand for a price increase, contrary to its contractual obligations, and has refused to supply to Yanfeng since***

*August 1, 2022.*

48.   No provision of the Ts & Cs authorizes Diversified to unilaterally change the parties' agreed pricing of the Components mid-program, or to stop supplying the Components because Yanfeng won't agree to Diversified's price-increase demands.

## III.   The Disastrous and Irreparable Result of Diversified's Repudiation and Breach

49.   Diversified's Components are specially designed and manufactured for use by Yanfeng in the parts it supplies to its OEM customers.

50.   The Components are unique and made with specialized tooling. Yanfeng cannot obtain them anywhere else for at least six months, or longer. Diversified knows this is and is opportunistically taking advantage.

51.   The tooling for the parts were specially designed.

52.   Since the Components and tooling are unique to Diversified, Yanfeng, as a practical matter, cannot quickly find and transfer supply of the Components to an alternate supplier.

53.   Further, since Diversified is the sole and exclusive supplier of the Components pursuant to the Contract, Yanfeng cannot buy from a new supplier without the approval of each OEM customer and participation in any resourcing process, especially since the Components are part of the OEMs tightly-controlled vehicle program supply chain.

54.    To re-source production to an alternate supplier, Yanfeng will need to find a new supplier, obtain each of the OEM's separate approvals for that change, and design and build new tooling, in addition to the ordinary and customary Production Part Approval Process ("PPAP") that is required to validate a new supplier's manufacturing process.

55.    This process will take approximately 6-12 months, assuming each OEM even agrees to an alternate supplier, a smooth transition, and that no unforeseen circumstances arise.

56.    Diversified is fully aware of the contractual and practical impossibility of Yanfeng's resourcing Diversified's business to a new supplier immediately and is aware of the extended time necessary to locate a new supplier and to test and validate replacement parts.

57.    The automotive industry operates on the just in time ("JIT") delivery basis which means automobile components are delivered only as required by current production of the OEM customers, and often either on the same day or just 24-48 hours before the products manufactured by Yanfeng are to be shipped to its customer.

58.    Fortunately, the OEM programs at issue are still up and running despite all of the supply chain issues ongoing in the industry.  But that makes it even more imperative for Yanfeng to keep these programs going and for Diversified to not add

more shutdowns and job losses by eliminating supply to Yanfeng and, subsequently, Yanfeng's customers.

59.     If Diversified is not ordered to recommence supplying Components to Yanfeng, and supplying the Components at the parties' agreed pricing, the impact on Yanfeng as a whole will be disastrous and irreparable.

60.     Furthermore, Diversified indicates that it is in financial peril and is considering exiting the automotive business altogether, foreclosing the ability of Yanfeng to obtain a legal remedy.

61.     In light of Diversified's refusal to ship Components effective August 1, 2022, and subsequent refusal by Diversified to engage Yanfeng, Yanfeng was forced seek immediate injunctive relief.

62.     Diversified has agreed that Yanfeng's Ts & Cs of purchase govern the parties' supply relationship. Diversified has agreed that in a situation such as this, injunctive relief or specific performance is necessary and warranted and that Yanfeng is expressly entitled to it:

> In any action brought by [Yanfeng] to enforce [Diversified's] obligations in connection with the production or delivery of Supplies or transition support, or for possession of property, [Diversified] ***acknowledges and agrees that monetary damages are not a sufficient remedy for any actual, anticipatory or threatened breach of the Order and that, in addition to all other rights and remedies that [Yanfeng] may have, [Yanfeng] shall be entitled to specific performance and injunctive equitable relief as a remedy for any such breach, plus [Yanfeng's]***

*reasonable attorneys' fees and costs*.

**Exhibit 5,** ¶ 13 (emphasis added).

63.     In light of Diversified's refusal to ship parts, effective August 1, 2022, Yanfeng has no choice but to seek immediate, emergency injunctive relief. Make no mistake, Diversified can supply parts—just like it has been doing.  It has made a conscious decision to breach and make a ransom demand.

## COUNT I – BREACH OF CONTRACT

64.     Yanfeng incorporates by reference all preceding paragraphs.

65.     Yanfeng entered into valid, binding contracts with Diversified wherein Diversified is obligated to supply all of Yanfeng's requirements for Components listed in the purchase orders for the life of the OEM customer programs.

66.     Diversified's actions constitute a blatant, unreasonable, and bad-faith repudiation in addition to material breaches of the contracts, irreparably damaging Yanfeng.

67.     As alleged above, Yanfeng has no adequate remedy at law for the harm caused by Diversified's breaches.

68.     Alternatively, Diversified's breach of the Contract are causing, and will continue to cause, extensive damages to Yanfeng.

## COUNT II – INJUNCTIVE RELIEF

69.     Yanfeng incorporates by reference all preceding paragraphs.

70. Diversified agreed, pursuant to the contracts, to be the sole source of supply for the Components to Yanfeng for the life of the OEM customer programs.

71. Diversified now seeks to be relieved of its obligations to supply and has doubled down on its position by refusing to ship its Components effective August 1, 2022.

72. Yanfeng's production for the OEM customer programs will halt in the very near future and force Yanfeng, Ford, GM, and Stellantis plant shutdowns if Diversified is not ordered to comply with its continuing supply obligations. Further customers will be impacted in the subsequent weeks.

73. Yanfeng cannot obtain the unique Components supplied by Diversified from a substitute source in less than the time it will take for Yanfeng to suffer irreparable harm and cannot obtain the requisite engineering and safety certifications and approvals for a substitute supplier for 6-12 months – long after the various production lines are shut down.

74. If Yanfeng's production halts thousands of workers will be adversely affected not only at Yanfeng's plants, but also among the whole supply chain of each of the OEMs it supplies.

75. Yanfeng will, in the absence of injunctive relief, suffer irreparable harm in the form of lost good will and permanent damage to its customer relationships.

76. Diversified's failure to continue supplying the Components will cause

Yanfeng irreparable injury that cannot be remedied at law.

## COUNT III – SPECIFIC PERFORMANCE

77.    Yanfeng incorporates by reference all preceding paragraphs.

78.    Yanfeng has no adequate remedy at law for the harm caused by Diversified's breaches.

79.    Under MCL § 440.2716 (Section 2716 of Michigan's Uniform Commercial Code), Yanfeng is entitled to specific performance.

80.    Section 2716 states, in pertinent part, that "specific performance may be decreed where the goods are unique or in other proper circumstances."

81.    Similarly, Yanfeng's terms and conditions entitle Yanfeng to specific performance. (**Exhibit 5**, ¶ 13.)

82.    Proper circumstances exist because Yanfeng will not be able to obtain an alternative source of supply in sufficient time to avoid irreparable harm and will suffer dire consequences as noted above.

83.    Accordingly, Yanfeng requests that this Court order Diversified to immediately recommence supplying all of the contracted for Components to Yanfeng without any interruption of supply pursuant to the Contract.

## COUNT IV – DECLARATORY RELIEF

84.    Yanfeng incorporates by reference all preceding paragraphs.

85.    As demonstrated above, a case of actual controversy exists between the

parties regarding Diversified's supply obligations of the Components to Yanfeng pursuant to the Contract.

86.     Diversified is required to honor its supply obligations of the Components under the Contract for the life of the OEM customer programs.

## **RELIEF REQUESTED**

WHEREFORE, Yanfeng requests that this Court grant Yanfeng the following relief:

A.     Preliminary and permanent injunctive relief, under MCR 3.310(B) preventing Diversified from taking any action inconsistent with its supply obligations to Yanfeng;

B.     Preliminary and permanent mandatory injunctive relief, under MCR 3.310(B), requiring Diversified to supply Yanfeng pursuant to the Contract with necessary quantities of Components to satisfy Yanfeng's requirements for the affected OEM programs;

C.     Declaratory relief setting forth that Diversified is required to honor its supply obligations of the Components pursuant to its Contract and for the life of the OEM programs;

D.     An award of damages in whatever amount Yanfeng is found to be entitled;

E.     An award of legal fees, professional fees, and other costs arising out of

Diversified's breaches of the Contract; and

      F.     All such other relief as this Court may deem just, equitable or appropriate under the circumstances.

                Respectfully submitted,

                **The Miller Law Firm, P.C.**

                */s/ Martha J. Olijnyk*
                Marc L. Newman (P51393)
                Martha J. Olijnyk (P60191)
                Jacob M. Campbell (P83900)
                950 W. University Dr., Ste. 300
                Rochester, MI 48307
                T: (248) 841-2200
                F: (248) 652-2852
                Email: mln@miller.law
                Email: mjo@miller.law
                Email: jc@miller.law
                *Attorneys for Plaintiffs*

Date: August 5, 2022

## VERIFICATION

I, Mark Gibbs, hereby certify that I am employed by Yanfeng US Automotive Interior Systems I LLC as a Commodity Buyer in the Procurement department. I am authorized to verify the foregoing Verified Complaint Injunctive and Other relief ("Verified Complaint") on behalf of Yanfeng International Automotive Technology Co., Ltd., f/k/a Yanfeng Global Automotive Interior Systems Co., Ltd., Yanfeng US Automotive Interior Systems I LLC, and Yanfeng US Automotive Interior Systems II LLC, and do so based upon personal knowledge, the records of Yanfeng Global Automotive Interior Systems Co., Ltd., Yanfeng US Automotive Interior Systems LLC, and Yanfeng US Automotive Interior Systems II LLC, and/or matters made known to me. I, therefore, verify that the facts stated in the foregoing Verified Complaint are true and correct to the best of my personal knowledge, information and belief.

By: _____

Printed name: Mark Gibbs

Dated: 8/5/2022

Subscribed and sworn before me on this 5 day of August, 2022

_____
Notary Public
Acting in Beaufort County, S C

Glenn Alan McCormick
South Carolina Notary Public
Commission Expires: July 11, 2032

-23-